IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


CAROLE PAGE,                                        CV 06-968-MA

            Plaintiff,                       OPINION AND ORDER

        v.

Commissioner of Social Security,


                Defendant.

        **TIM WILBORN**
        2020-C SW 8th Avenue, PMB # 294
        West Linn, OR  97068-4612
        (503) 697-7019

            Attorney for Plaintiff

        **KARIN J. IMMERGUT**
        United States Attorney
        **NEIL J. EVANS**
        Assistant United States Attorney
        1000 S.W. Third Avenue, Suite 600
        Portland, OR  97204-2902
        (503) 727-1053

        **STEPHANIE R. MARTZ**
        Special Assistant United States Attorney
        Social Security Administration
        701 5th Avenue, Suite 2900 M/S 901
        Seattle, WA  98104-7075
        (206) 615-2272

            Attorneys for Defendant

**MARSH, Judge:**


1- OPINION AND ORDER

## INTRODUCTION

Plaintiff Carole Page (Page) seeks judicial review of a final decision of the Commissioner of Social Security denying her application for disability insurance benefits under Title II of the Social Security Act.  42 U.S.C. §§ 401-33.  This Court has jurisdiction under 42 U.S.C. § 405(g).

Page moves this Court to remand her case for an immediate calculation of benefits.  The Commissioner maintains that her decision is based on substantial evidence and should be affirmed.

After a thorough and careful review of the record, the Commissioner's decision is AFFIRMED.

## BACKGROUND

Page applied for disability on June 3, 2003, alleging she became disabled on January 22, 2001, due to degenerative disc disease, facet arthritis, and degenerative intervertebral joint disease.  She was 52 years old at the time of her alleged onset of disability, with two years of college education and past work as a data coordinator, administrative assistant, office manager, executive director, and ledger clerk.

Following a hearing on August 11, 2005, before an Administrative Law Judge (ALJ), at which Page was represented by counsel, the ALJ issued a written decision on November 22, 2005, finding Page retained the capacity to perform her past work as an administrative clerk and office manager, and was therefore not

2- OPINION AND ORDER

disabled.   This became the Commissioner's final decision when the Appeals Council denied Page's request for review on May 15, 2006.

## STANDARD OF REVIEW

The initial burden of proof rests on the claimant to establish disability.  Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995).  To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A). The Commissioner bears the burden of developing the record. DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991).

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record.  42 U.S.C. § 405(g); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).  "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Id.

The court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision.  Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).  The Commissioner's decision must be upheld, even if the evidence is susceptible to

3- OPINION AND ORDER

more than one rational interpretation.  <u>Andrews</u>, 53 F.3d at 1039-
40.  If the evidence supports the Commissioner's conclusion, the
Commissioner must be affirmed; "the court may not substitute its
judgment for that of the Commissioner."  <u>Edlund v. Massanari</u>, 253
F.3d 1152, 1156 (9th Cir. 2001).

## <u>DISABILITY ANALYSIS</u>

The Commissioner has established a five-step sequential
process for determining whether a person is disabled.  <u>Bowen v.
Yuckert</u>, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520.  The
claimant bears the burden of proof at steps one through four.
<u>See</u> <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098 (9th Cir. 1999).  Each
step is potentially dispositive.

Here, at step one, the ALJ found that Page had not engaged
in substantial gainful activity since her alleged disability
onset date.  <u>See</u> 20 C.F.R. § 404.1520(b).

At step two, the ALJ found that Page had "severe"
degenerative disc changes, and status-post fusion in the remote
past with vertebral facet arthritis but no nerve root
compression.  <u>See</u> 20 C.F.R. § 404.1520(c).

At step three, the ALJ found Page's impairments did not meet
or equal the requirements of a listed impairment.  <u>See</u> 20 C.F.R.
§ 404.1520(a)(4)(iii), 404.1520(d).

The ALJ determined that Page had the residual functional
capacity to work with a sit/stand option; sit, stand/walk four

hours each in an eight-hour workday; lift fifteen pounds for two hours and twenty pounds for one hour, and; stoop four hours in a workday.  See 20 C.F.R. §§ 404.1520(e), 404.1545; see also Social Security Ruling (SSR) 96-8p.

At step four, the ALJ found Page remained capable of performing her past relevant work as an administrative clerk and office manager.  See 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f).  Having found Boyd not disabled at step four, the ALJ did not reach step five of the sequential evaluation.  See 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g).

## DISCUSSION

On appeal to this court Page alleges the ALJ erred by: (1) failing to provide legally sufficient reasons for rejecting her testimony; (2) failing to provide legally sufficient reasons for rejecting lay witness testimony; and, (3) failing to properly evaluate medical evidence.

## I.   The ALJ's reasons for rejecting Page's testimony were clear and convincing, and based on substantial evidence.

Page alleges the ALJ's reasons for discrediting her were not clear and convincing.  The Commissioner avers that they were.

The ALJ is required to consider a claimant's testimony regarding subjective symptoms, such as pain or depression.  20 C.F.R. § 404.1529.  However, the ALJ is not required to automatically credit the claimant's allegations, or disability

benefits would be available on demand.  <u>See</u> <u>Fair v. Bowen</u>, 885
F.2d 597, 603 (9th Cir. 1989).  Rather, once the claimant has
produced objective medical evidence of an impairment that could
reasonably be expected to produce some degree of the symptoms
alleged, assuming there is no evidence of malingering, the ALJ
can only reject a claimant's testimony for clear and convincing
reasons, supported by substantial record evidence.  <u>See</u> <u>Smolen v.</u>
<u>Chater</u>, 80 F.3d 1273, 1284 (9th Cir. 1996); <u>see also</u> <u>Morgan v.</u>
<u>Apfel</u>, 169 F.3d 595, 599 (9th Cir. 1999).

Examples of clear and convincing reasons include: (1) a
claimant's reputation for dishonesty, prior inconsistent
statements concerning her symptoms, and other testimony by the
claimant that appears to be less than candid; (2) unexpected or
inadequately explained failure to seek treatment or to follow a
prescribed course of treatment; (3) medical evidence tending to
discount the severity of the claimant's subjective claims; and
(4) inconsistency between the claimant's daily activities and the
degree of disability she alleges.  <u>See</u> <u>Rollins v. Massanari</u>, 261
F.3d 853, 856-57 (9th Cir. 2001).

Here, the ALJ relied on the latter two reasons to reject
Page's testimony.  First, the ALJ determined that objective
medical evidence did not support the degree of impairment alleged
by Page.  Page claimed to be unable to sit for more than a few

6- OPINION AND ORDER

minutes at a time, and that she could only stand for 15 to 20
minutes at a time.  The ALJ throughly reviewed the objective
medical evidence and found that it showed the fusion she
underwent in the 1980s had "remained solid and her only changes
are mild degenerative changes without neurological compromise."

The ALJ noted that the record showed Page began complaining
of low back pain again in early 2001.  Michael Knower, M.D.,
prescribed Vicodin and advised Page to undergo physical therapy.
In February 2001, Page had a lumbar magnetic resonance image
(MRI) scan, which showed some degenerative changes, but was
"essentially negative."  In May 2001, Kathleen Moore, M.D.,
opined that Page would not benefit from surgery, and advised Page
to consult with a rehabilitation specialist and continue taking
pain and anti-inflammatory medications.  Later that month Dr.
Knower's examination of Page was negative, despite Page's
continued complaints of pain.  In early July 2001, Robert
Andrews, M.D., found Page's pain was significantly reduced by
injections and narcotic pain medication, and her sleep was
improved with Amitriptyline.  She was very physically active and
working part time.  Dr. Andrews stated that he was unsure of the
etiology of Page's pain.

In February 2002, Page had more injections after
discontinuing a new pain medication that reportedly caused

adverse side effects.  In June 2002, James Sulkosky, M.D.,
examined Page and found she had a full range of motion in her
hips and knees, with pain caused by straight leg raising and
sciatic stretch testing.

In February 2003, Page complained to Dr. Knower that her
back pain increased after switching from OxyContin to Methadone.
In June 2003, David Evans, M.D., examined Page and found no
evidence of atrophy, deformity, or vascular problems.  He noted
localized tenderness in the lower lumbar spine and bilateral SI
joints, but normal strength and reflexes, and normal gait and
sensation.  Dr. Evans concluded that Page's symptoms were largely
subjective.

In March 2005, Dr. Moore examined Page, noting that she had
normal strength, with a mildly antalgic gait.  She concluded that
Page was not a good candidate for disc replacement at that time.
She advised Page to continue taking medication.

Based on this evidence, the ALJ concluded that Page's
"statements concerning her impairments and limitations are not
entirely credible...".

Page contends the ALJ applied a higher standard of evidence
in her case by requiring her to provide evidence of the degree of
pain she alleged, rather than simply an impairment that could
cause some degree of pain.  However, I do not find any support

8- OPINION AND ORDER

for this claim.  The ALJ reviewed the medical evidence before rejecting Page's testimony precisely because she produced evidence of an impairment that could be expected to cause some degree of pain.  The ALJ then cited the lack of objective medical findings as one reason, among others, for disbelieving Page's testimony that she was as limited as she claimed to be.

The ALJ's second reason for rejecting Page's subjective limitations was that her activities of daily living showed she was "far more active than she alleged."  The ALJ noted that Page continued working part-time as a bookkeeper after her alleged onset of disability, and that she walks two or three miles a week.  The ALJ also noted Page's father, Eugene Derr's, report that Page runs errands and shops, drives, visits friends, occasionally goes to restaurants, exercises daily, watches 4-6 hours of television per day, takes care of pets and wildlife, does handicrafts, prepares meals for herself and others on a daily basis, and does the housecleaning.

Page argues the ALJ erred in rejecting her testimony based on these activities because they do not demonstrate that she can sustain full-time work activity 8 hours a day, 5 days a week. Yet, that is not the rule under the credibility determination. Without necessarily commenting on a claimant's ability to sustain full-time work activity, the ALJ can still properly conclude that

her activities of daily living are inconsistent with the degree
of impairment she alleges.  In this case the ALJ considered
Page's reported activities, such as that she watches four to six
hours of television each day, as one reason to discredit her
claim that she can only sit for a few minutes at a time.  Since
the ALJ's resolution of this evidence, which is arguably
susceptible to more than one rational interpretation, was
reasonable, this court will not second guess it.  Edlund, 253
F.3d at 1156.

In summary, I find the ALJ's reasons for discrediting Page
to be clear and convincing.

## II.  The ALJ's evaluation of lay witness testimony was legally sufficient.

Page contends the ALJ erred by failing to fully credit the
report of her father, Eugene Derr (Derr).  According to Page, the
ALJ should have credited Derr to find that Page must nap during
the day because her sleep is disrupted by pain, that on bad days
she is unable to do most activities, and that she cannot perform
more than two hours of work per week.

As the Commissioner points out, Derr did not exactly testify
to these limitations.  Derr filled out a third party worksheet
provided by Disability Determination Services (DDS), on which he
indicated, among other things, that Derr naps once or twice a

week - on days following sleepless nights, that she is unable to do most activities on bad days and the day after a bad day, and that she was employed for a couple hours each week as a bookkeeper.  Derr did not state, as Page contends, that Page takes naps everyday, or that pain forces her to limit her employment to two hours per week.

The ALJ generally accepted Derr's observations regarding Page's activities, finding them "consistent with the medical evidence."  However, the ALJ rejected Derr's report that Page needed to nap once or twice a week because he found "little in the record to support that conclusion."  This was a germane reason to reject lay witness testimony.  See Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001).

The ALJ also rejected Derr's conclusion that Page's condition had deteriorated over the years, based on a lack of supporting clinical evidence, as discussed above.  Though Page does not quibble with the finding, it bears noting that this type of lay witness testimony is not considered "competent testimony" and therefore the ALJ was not required to even consider it.  See Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984).

In summary, I find no error with the ALJ's treatment of the lay witness testimony in this case.

11- OPINION AND ORDER

**III. The ALJ's evaluation of the medical evidence is supported by substantial evidence and free of legal error.**

Page alleges the ALJ erred in his assessment of two physician's opinions – Dr. Moore and Dr. Knower. She also contends the ALJ failed to properly consider the side effects of medication.

The standards employed by the Commissioner when evaluating medical evidence in disability cases are found at 20 C.F.R. § 404.1527(d). The Commissioner weighs the opinion of a treating physician by considering the following factors: (1) the length of the treatment relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, (3) the degree of supporting explanations and evidence, (4) consistency with the record as a whole, (5) whether the physician specializes in the medical issue about which he opines, and (6) other evidence such as whether the physician is familiar with the claimant's case record. Id.

The Commissioner evaluates the opinion of a nontreating, examining physician and/or psychologist based on (1) medical specialty and expertise with the Social Security rules, (2) supporting evidence in the case record, (3) supporting explanations provided by the physician or psychologist, and (4) any other relevant factors. 20 C.F.R. § 404.1527(f).

To reject the uncontroverted opinion of a treating physician, the ALJ must present clear and convincing reasons for doing so.  Rodriguez v. Bowen, 876 F.2d 759, 761-62 (9th Cir. 1989).  To reject the opinion of a treating physician that conflicts with another physician's opinion contained in the record, the ALJ must give specific and legitimate reasons based on substantial evidence.  Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).

The opinion of a nonexamining, testifying medical expert (ME) may serve as substantial evidence for rejecting a contradicted treating physician's opinion if it is supported by other evidence in the record.  See Andrews, 53 F.3d at 1041.

"Although the ALJ is not bound by expert medical opinion on the issue of disability, he must give clear and convincing reasons for rejecting such an opinion where it is uncontra-dicted."  Gallant v. Heckler, 753 F.2d 1450, 1454 (9th Cir. 1984).

**A.   Dr. Moore**

According to Page, the ALJ wrongly rejected the opinion of Dr. Moore that she must lie down for one hour during every workday.  Page argues that this opinion was entitled to controlling weight, and therefore could only be discredited for clear and convincing reasons.  The Commissioner avers that the

ALJ rightly rejected this opinion as it was not consistent with objective medical evidence, showing only mild clinical and examination findings.

Dr. Moore's opinion is found on a check-the-box worksheet, provided to her by Page's attorney, on which she checked that Page could lift between 10 and 20 pounds throughout the day, sit, stand and walk 4 hours each, per day, and perform various movements. The ALJ stated that he gave Dr. Moore's opinion, "substantial weight in general" but discounted the need to lie down for one hour every workday because this limitation was "not consistent with any examination reports."

Although the ALJ did not provide a step-by-step analysis of Dr. Moore's opinion, substantial evidence supports her rejection of the one-hour nap limitation. As a non-treating, examining physician Dr. Moore's opinion could be rejected for specific and legitimate reasons. 20 C.F.R. § 404.1527(f). Dr. Moore only examined Page twice, on May 1, 2001, and March 17, 2005. At the time she filled out the worksheet she had not seen Page for four years. Thus, Page's contention that Dr. Moore was "familiar with her longitudinal history" is unfounded.

Next, Dr. Moore's examination that day revealed mild findings. Dr. Moore also reviewed an April 2004 MRI, concluding that it showed Page had degenerative disc disease and facet

disease.  However, the ALJ stated that she instead deferred to the medical expert's (ME) testimony that facet disease is not a widely accepted medical diagnosis, and that the MRI revealed minimal evidence of disk disease.  As stated above, the opinion of an ME may serve as substantial evidence for rejecting a contradicted physician's opinion if it is supported by other evidence in the record.  See <u>Andrews</u>, 53 F.3d at 1041.

This leads to a third important point.  Contrary to Page's contention, Dr. Moore's assessment was controverted by another physician– the ME.  Page selectively cites the ME's testimony, arguing that he supported finding that she has "an enormous amount of discomfort."  Yet, the ME clearly stated at the outset, "*the story that Mrs. Page tells us* is that she has an enormous amount of misery and pain in the back area."  (emphasis added).  He then testified that, in his opinion, "[t]he actual amount of disk disease that [Page] has documented on her MRI's is minimally small, and would not in any way be adequate to explain her symptomology."  I find this to be a reasonable resolution of conflicting evidence.

Finally, Dr. Moore also failed to provide a supporting explanation for her opinion that Page needed to nap for an hour each day.  There aren't any notes on the check-off worksheet.  Thus, I infer that the ALJ also found Dr. Moore's opinion less

persuasive because "fill-in-the-blank" documentation and "check-off worksheets" are disfavored forms of medical evidence in this circuit.  <u>See</u> <u>Young v. Heckler</u>, 803 F.2d 963 (9th Cir. 1986); <u>Crane v. Shalala</u>, 76 F.3d 251 (9th Cir. 1996); <u>see</u> <u>also</u> 20 C.F.R. §§ 404.1527(d)(2), (3).

In sum, I find the ALJ's reasons for rejecting Dr. Moore's opinion to be specific and legitimate, and based on substantial evidence.

**B.  Dr. Knower**

Page contends the ALJ wrongly rejected Dr. Knower's opinion that she would be "unable to sit through a standard 8-hour workday," and that he "would anticipate absences through a regular 40-hour work week."  She argues that Dr. Knower "properly relied on his subjective judgment as a long-term treating physician."  The Commissioner maintains that although the ALJ stated that she did not accept Dr. Knower's opinion, her finding that Page could only sit for one hour at a time was consistent with Dr. Knower's opinion about Page's ability to sit.  Regarding the opinion that she would be absent from work, the Commissioner states that since Dr. Knower did not indicate how often Page would be absent the ALJ need not have commented on this opinion.

The ALJ reviewed Dr. Knower's chart notes, which revealed that Dr. Knower treated Page four or five times a year, beginning

16- OPINION AND ORDER

in 2001, for back pain and headaches.  Dr. Knower indicated early
on that he was uncertain of the etiology of Page's pain, given
that his physical examinations revealed only mild findings.
Thus, the ALJ found Dr. Knower's assessment inconsistent "with
the mild clinical and examination findings."

As a treating physician Dr. Knower's opinion is entitled to
greater weight than that of an ME.  However, as stated above,
when a treating physician assesses limitations that are
inconsistent with the record as a whole, and not accompanied by a
supporting explanation, as the ALJ found Dr. Knower's to be, his
opinion will be accorded less weight.  See 20 C.F.R. §
416.927(d).  Furthermore, a treating physician's opinion can be
discredited for specific and legitimate reasons if it is
controverted by another physician of record, such as the ME in
this case.  See Andrews, 53 F.3d at 1041.

I find the ALJ's reason for discrediting Dr. Knower in this
case to be specific and legitimate, and based on substantial
evidence.

**C.    Medication Side-effects**

Finally, Page contends the ALJ erred by failing to take into
consideration the side-effects of her medication.  She points to
SSR 96-7p, in support of her argument that "the ALJ must consider
the side effects of medications when determining the claimant's
residual functional capacity."

In fact, SSR 96-7p requires the ALJ to consider any side effects of medicine when assessing the credibility of a claimant's statements.  As the Commissioner points out, in this case, Page did not testify that she had side-effects.  There is one record indicating that she discontinued a pain medication due to adverse side effects.  However, there isn't any evidence indicating what the side-effects were, or that they caused work-related functional limitations expected to last for a period of at least 12 months, such that the ALJ should have considered side-effects to be a "severe" impairment.  <u>See</u> 20 C.F.R. § 404.1521; <u>see</u> <u>also</u> SSR 96-3p.

Page argues hypothetically that "if [she] takes sufficiently large doses of narcotic pain medications...[they] so seriously interfere with her cognition that she is not able to function at work-like tasks."  However, there isn't any evidence indicating what a "sufficiently large dose" would be, that she in fact takes this much medication, or that it does cause work-related functional limitations.  Accordingly, I do not find any merit to this argument.

## CONCLUSION

Based on the foregoing, the Commissioner's decision is AFFIRMED and this case is DISMISSED.

IT IS SO ORDERED.

DATED this _31 day of January, 2007.

/s/   Malcolm F. Marsh
Malcolm F. Marsh
United States District Judge